**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO**

KAYRON MCCLUNEY,

Plaintiff,

vs.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE,

Defendant.

_____________________________________/

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MCCLUNEY, sues Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (Defendant), and alleges:

## PRELIMINARY ALLEGATIONS

1. This is an action in excess of $75,000, exclusive of costs and attorney's fees.
2. Plaintiff, KAYRON MCCLUNEY, is a citizen of the state of Tennessee.
3. Defendant, CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINE, is a foreign corporation with their principal place of business and corporate headquarters in the state of Florida.
4. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332. In the event that the Court finds that this case does not come under diversity of citizenship jurisdiction, Plaintiff wishes to proceed with her case in Florida state court

with a trial by jury. If that is not possible, then she elects to proceed under the admiralty jurisdiction of this Court pursuant to 28 U.S.C. § 1333.

5. At all times material hereto, Defendant was authorized to transact business and maintained an office in Miami-Dade County, Florida.

6. At all times material hereto, Defendant personally, or through an agent;

   a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b. Engaged in substantial and not isolated business activity within this state.

   c. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

7. The causes of action alleged in this Complaint arise under the general maritime law of the United States.

8. Venue is proper because Plaintiff's passenger ticket requires that suit be filed in federal district court in Miami-Dade County, Florida.

9. At all times relevant to this action, Defendant was engaged in the business of providing to the public, for compensation, vacation cruises aboard its cruise vessel, *Carnival Liberty*.

10. At all times material to this action, the cruise vessel *Carnival Liberty* was located in navigable waters.

11. At all times material to this action, Defendant owned, operated, managed, maintained and/or controlled the cruise ship vessel *Carnival Liberty* and its agents and/or employees aboard the vessel.

12. Plaintiff was a fare-paying passenger onboard the cruise on Defendant's vessel *Carnival Liberty*, which was in navigable waters. A copy of her ticket and/or an exemplar ticket is in Defendant's possession, custody or control.

13. Plaintiff and her travel companion Arthur W. Grimes boarded Defendant's cruise vessel *Carnival Liberty* in Miami, FL for a seven-day Caribbean cruise on or about November 2, 2025.

**Factual allegations**

14. On or about November 7, 2025, a shower rod broke as Plaintiff was getting out of shower in her assigned cabin # 6314 on Defendant's vessel *Carnival Liberty* causing her to slip and fall suffering injuries.

15. Plaintiff merely put her hand on the shower rod for balance as she exited the shower in light of the wet and unreasonably slippery floor in the shower and bathroom.

16. When the shower rod broke, Plaintiff slipped and fell on the wet and unreasonably slippery floor causing her to suffer severe and permanent injuries.

17. At the time of the incident, Plaintiff was using reasonable care for her own safety.

18. There were no warnings advising Plaintiff to not use the shower rod for balance or to grab.

19. There were no other grab bars/rods in the subject shower.

20. The shower floor was unreasonably slippery when wet.

21. Defendant did not provide an anti-slip mat in shower in Plaintiff's assigned cabin.

22. Defendant did not provide anti-slip strips on the floor of the shower in Plaintiff's assigned cabin.

23. At all times material to this action, Defendant designed and/or approved and/or accepted the design the bathroom and shower in Plaintiff's assigned cabin.

24. At all times material to this action, Defendant selected and/or approved and/or accepted the materials and equipment in the bathroom and shower in Plaintiff's assigned cabin.

25. At all times material to this action, Defendant selected and/or approved and/or accepted the shower rod in Plaintiff's assigned cabin shower.

26. At all times material to this action, Defendant and/or its employees/agents installed, maintained, inspected and repaired the shower rod in Plaintiff's assigned cabin shower.

27. At all times material to this action, Defendant and/or its employees/agents selected and/or approved and/or accepted the floor material in the area of the subject incident.

28. Defendant did not provide a reasonably secure safety grab bar or rod in Plaintiff's assigned cabin's shower.

29. Defendant did not inform Plaintiff to not use the metal rod in the shower of her assigned cabin.

30. Defendant did not inform Plaintiff to not grab the metal rod in the shower of her assigned cabin.

31. The subject shower rod was under the exclusive control of Defendant when the cabin and shower were provided for Plaintiff's use.

32. The broken shower rod is of a type of mishap that ordinarily does not occur in the absence of negligence.

33. Defendant and Defendant's crew member(s)/employee(s) failed to provide an adequate shower rod and/or grab bars in the shower in Plaintiff's assigned cabin.

34. Defendant and Defendant's crew member(s)/employee(s) failed to provide an anti-slip shower mat for the shower in Plaintiff's assigned cabin.

35. Defendant and Defendant's crew member(s)/employee(s) failed to adequately warn Plaintiff to not hold, grab or use for balance the metal shower rod.

36. Defendant and Defendant's crew member(s)/employee(s) failed to maintain the floor in a safe condition.

37. Defendant knew that passengers would grab the shower rod when utilizing the shower.

38. Defendant knew that the shower area would often be wet and slippery due to water and soap from individuals taking a shower.

39. Defendant knew the guest cabin showers were located on a cruise ship subject to movement.

40. Defendant knew that the water and soap would be on the guest cabin shower floor when a guest used the shower.

41. Defendant knew that guests may need something for balance or to hold while utilizing the guest cabin shower.

42. There was no warning/caution sign in the area of the subject shower rod or shower.

43. There were multiple prior falls in showers on Defendant's cruise ships, including but not limited to:

a. Barbara Hall

b. Barbara Fisher

c. Dianna Marie Blythe

d. Mary Jane O'Bryan

e. Cheryl Bigtree

f. Hung Kang Huang

44. Defendant knew or should have known of the dangerous condition of the floor in the area of the subject incident.

45. Defendant's crew members/employees acting within the course and scope of their employment were responsible for inspecting and monitoring that area.

46. Defendant's crew members/employees acting within the course and scope of their employment knew or should have known about the unreasonably slippery floor in the area of the subject incident.

47. Defendant's crew members/employees acting within the course and scope of their employment knew or should have known that passengers would touch, hold and/or grab the shower rod in the area of the subject incident.

48. Defendant's crew members/employees acting within the course and scope of their employment failed to warn Plaintiff of the unreasonably slippery floor in the area of the subject incident.

49. Defendant's crew members/employees acting within the course and scope of their employment failed to warn Plaintiff of the defective and/or unsecure shower rod in the area of the subject incident.

50. Defendant's crew members/employees acting within the course and scope of their employment failed to block and/or restrict Plaintiff's access to the shower in the area of the subject incident.

51. Defendant's crew members/employees acting within the course and scope of their employment allowed Plaintiff to access the shower in the area of the subject incident.

52. Defendant's crew members/employees acting within the course and scope of their employment failed to properly maintain the area of the incident in a reasonably safe condition.

53. Plaintiff immediately reported the incident to Defendant via a 911 call for help.

54. Due to prompt reporting of the incident, Defendant has the ability to identify the specific area the incident took place as well as the specific employees involved in the conduct alleged herein.

55. Following the incident, Plaintiff was transported to the ship's medical facility via wheelchair.

56. Plaintiff sought and received medical attention from the ship's medical facility for her injuries, including but not limited to her right knee and leg.

57. The ship's medical personnel provided Plaintiff with pain medication, including Morphine and Ondansetron injections.

58. The ship's medical personnel took X-rays which revealed right midshaft fracture of Plaintiff's femur.

59. The ship's medical personnel splinted her right leg in a below knee to hip backslab for temporary immobization.

60. The ship doctor and other ship medical personnel were acting within the course and scope of his/her/their employment when evaluating and treating Plaintiff.

61. Plaintiff was medically disembarked in Cozumel, Mexico.

62. She was taken via ambulance to a Mexican hospital where she was admitted on November 7, 2025.

63. On November 8, 2025, Plaintiff underwent surgery implanting a rod, screws and nail into her right leg (closed reduction and anterograde intramedular nailing) at the Mexican hospital.

64. On November 12, 2025, Plaintiff was discharged from the Mexican hospital and then flew home to Tennessee where she continued her medical treatment.

65. Plaintiff's medical care/treatment is ongoing and continuing.

66. As a result of the incident, Plaintiff suffered severe and permanent injuries, including but not limited to fractured right femur that required surgery with rod, screws and nail.

67. Plaintiff continues to experience pain and limitations.

**Allegations regarding notice**

68. As Plaintiff seeks to hold Defendant vicariously liable for the negligent acts and omissions of its employees, she is not required to plead notice. *See Yusko v. NCL (Bahamas) Ltd.*, 4 F. 4th 1164 (11th Cir. 2021) ("Our precedent assumes—and today we expressly hold—that when a passenger makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability, the passenger need not establish that the shipowner had actual or constructive notice of a risk-creating condition.").

69. Plaintiff also claims the Defendant was on notice of the dangerous conditions alleged in this case.

70. First, Defendant knew or should have known about the dangerous condition in the area of the subject incident because Defendant had in place policies and procedures

regarding safety, including wet slippery floors and equipment usage, on its vessel. These policies and procedures are "corrective measures" sufficient to establish Defendant's knowledge of the dangers posed by the unsafe shower rod and unreasonably slippery floor. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1266 (11th Cir. 2020).

71. Second, Defendant knew or should have known about the dangerous condition in the area of the subject incident floor because Defendant had in place policies and procedures regarding the placement of warning signs in dangerous/unsafe areas. These policies and procedures are "corrective measures" sufficient to establish Defendant's knowledge of the dangers posed by the unsafe shower rod and unreasonably slippery floor. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1266 (11th Cir. 2020).

72. Third, Defendant knew or should have known about the dangerous condition posed by the unsafe shower rod because Defendant had in place policies and procedures regarding the placement of blocking off and/or restricting passenger access to areas with a dangerous condition, including unsafe/defective equipment. These policies and procedures are "corrective measures" sufficient to establish Defendant's knowledge of the dangers posed by the unsafe shower rod and unreasonably slippery floor. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1266 (11th Cir. 2020).

73. Fourth, Defendant knew or should have known about the dangerous condition in the area of the subject incident because prior to Plaintiff's incident other passengers have slipped/tripped and fell in the area of the subject incident and other slippery areas on its ships.

74. Fifth, Defendant knew or should have known about the dangerous condition because it selected, installed, approved, accepted and/or maintained the floor and, as such, knew of the floor's slipperiness when wet.

75. Defendant also knew or should have known about the dangerous condition because it selected, installed, approved, accepted and/or maintained the shower (including the shower rod) and, as such, knew the shower rob was insecure and/or defective for guests to hold while exiting the wet, unreasonably slippery shower.

76. Defendant may have had other actual or constructive notice about the dangerous condition posed by the in the area of the subject incident prior to Plaintiff's incident. Plaintiff does not yet have the benefit of discovery to provide the full extent of Defendant's knowledge at this time.

**COUNT I – NEGLIGENCE**
**(VICARIOUS LIABILITY FOR THE ACTS AND OMISSIONS OF DEFENDANT'S CREW MEMBERS/EMPLOYEES)**

77. Plaintiff realleges, adopts, and incorporates by reference, as though fully set forth herein, paragraphs 1-76, and further alleges as follows.

78. At all times material, Defendant was vicariously liable for the acts and/or omissions of its crew members/employees who were acting within the course and scope of their employment.

79. At all times material, Defendant owed a duty to exercise reasonable care under the circumstances for the health, safety, and welfare of its fare-paying passengers, including Plaintiff.

80. At all times material, Defendant, through its crew members/employees who were acting within the course and scope of their employment, breached its duty of reasonable care to Plaintiff by:

a. Failing to adequately maintain the area of the subject incident in a reasonably safe condition;

b. Failing to adequately inspect the shower rod to ensure it was securely attached;

c. Failing to install secure grab bars in the shower;

d. Failing to provide anti-slip mats for use in the shower;

e. Failing to install anti-slip strips to the floor of the shower;

f. Failing to warn Plaintiff to not hold or otherwise use the shower rod for balance or support;

g. Failing to adequately monitor the area of the subject incident to determine if the condition was safe for passenger use, thereby creating a hazard;

h. Failing to block or restrict passengers, including Plaintiff's access, to the subject area;

i. Failing to warn Plaintiff about the hazards in the area of the subject incident, including but not limited to unreasonably slippery floor in shower and unsecure shower rod, through signage or otherwise;

j. Failing to follow Defendant's own policies and procedures regarding the proper maintenance, monitoring/inspection of the subject area, including the rod and floor; placement of warning signs, placement of non-slip covering, and restricting passengers access to unsafe areas; and/or

k. All other negligence acts and omissions to be learned in discovery.

81. As a direct and proximate result of Defendant's negligence, Plaintiff suffered severe injuries, including but not limited to the fractured right femur that required surgery with rod, screws and nail.

82. As a further direct and proximate result of Defendant's negligence, Plaintiff sustained serious and permanent injuries, pain and suffering, aggravation of pre-existing conditions, mental anguish, inconvenience, the loss of capacity for enjoyment of life, loss of earnings/benefits, and has incurred medical expenses in the past and will incur

additional medical expenses in the future. All of said damages are permanent and continuing in nature. In addition, Plaintiff lost the benefit of her vacation and cruise

WHEREFORE, Plaintiff demands judgment against Defendant for all damages recoverable under the law, including pre- and post-judgment interest, costs of suit, and such further relief as this Court deems just and proper.

**COUNT II - NEGLIGENCE**
**DIRECT NEGLIGENCE OF DEFENDANT**

83. Plaintiff realleges, adopts, and incorporates by reference, as though fully set forth herein, paragraphs 1-76, and further alleges as follows.

84. It was the duty of Defendant to provide Plaintiff with reasonable care under the circumstances and the duty to warn Plaintiff of all dangers it knew or should have known.

85. Defendant was negligent as it breached its duties by:

a. Allowing an unsecure and/or defective shower rod in the area of the subject incident;

b. Allowing an unreasonably slippery floor in the area of the subject incident;

c. Failing to provide a secure grab bar, rod, and/or other item for guests to hold or use for balance when using the subject shower;

d. Failing to have an anti-slip mat in the subject shower;

e. Failing to have anti-slip strips on the floor in the subject shower;

f. Failing to have a proper surface on the floor of the subject shower that would not be unreasonably slippery when wet and/or soapy;

g. Failing to have a warning/caution sign informing individuals to not hold or utilize the shower rod when using the subject shower;

h. Failing to have a reasonably safe shower area in Plaintiff's cabin;

i. Failing to establish proper policies and/or protocols to ensure that the shower in the area of the incident was reasonably safe, including having proper equipment for a guest to hold onto/use for balance while using the shower as well as the floor not being unreasonably slippery;

j. Failing to establish proper policies and/or protocols to ensure that the shower, including the equipment shower rod and floor, in the area of the incident was regularly inspected along with documentation of inspections to ensure reasonably safe and secure enough for a guest to hold onto/use for balance while using the shower as well as the floor not being unreasonably slippery;

k. Failing to establish proper policies and/or protocols to ensure that the area blocked from passenger's use when not reasonably safe;

l. Failed to block passengers access to subject area of incident when shower rod unsecure and/or defective as well as floor unreasonably slippery;

m. Failing to adequately supervise, manage, and/or instruct the ship's crew, in particular the crew member(s) responsible for the subject area of the incident;

n. Failing to warn or adequately warn Plaintiff that the subject shower rod was unsecure and/or defective and/or not supposed to be used for balance or to hold onto;

o. Failing to warn or adequately warn Plaintiff that the floor in the area of the subject incident was unreasonably slippery;

p. Failing to properly maintain the area in a safe and reasonable manner.

q. The shower rod Defendant utilized in the subject shower was of poor quality and/or cheap material.

r. Failing to have a shower rod of good quality in the subject shower.

s. Failing to promulgate and/or enforce adequate policies and procedures regarding:

i. Ensuring the shower rod in area of the subject incident was in a reasonably safe condition for guests to use for balance/hold onto or provide other secure grab bar/rod; and/or

ii. Monitoring the equipment, including the shower rod, in area of the subject incident to ensure that they remain safe; and/or

iii. Ensuring the floor in area of the subject incident was in a reasonably safe condition; and/or

iv. Monitoring the floor in area of the subject incident to ensure that they remain

safe; and/or

t. Failing to provide passengers with a reasonable safe shower in the guest cabins;

u. All other negligence acts and omissions to be learned in discovery.

86. With regard to the alleged unsafe, dangerous or defective condition(s), policy(ies) or procedure(s), the Defendant:

a. Knew of the foregoing conditions, policies or procedures in advance of the subject incident, but did not correct or warn of such, or

b. The foregoing conditions, policies or procedure existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have known of such, but did not correct or warn of them, or

c. Insofar as relates to the foregoing conditions, policies or procedures not created by the Defendant, Defendant's knowledge was or should have been acquired through (i) prior similar incident(s) and/or (ii) through its maintenance, inspection and/or observation(s) of the aforesaid conditions, policy(ies) or procedure(s) through shipboard personnel present at times leading up to and/or at the time of the subject incident or who otherwise were charged with such duties and/or (iii) through implementation of policies and/or procedures intended to prevent creation of such, but did not correct or warn of them and/or (iv) though warnings provided in wet/slippery areas/pertaining to equipment and/or (v) blocking passenger access when an area unsafe.

d. Insofar as relates to the foregoing conditions, policies or procedures created by the Defendant, by or through a person or entity acting for or on its behalf, knowledge or notice on the part of the Defendant is obviated because Defendant is indirectly /

vicariously liable.

87. All or some of the above acts and/omissions by Defendant, its agents, employees and/or crew members, directly caused and/or caused or contributed to Plaintiff being severely injured.

88. As a direct and proximate result of Defendant's negligence, Plaintiff suffered severe injuries, including but not limited to the fractured right femur that required surgery with rod, screws and nail..

89. As a further direct and proximate result of Defendant's negligence, Plaintiff sustained serious and permanent injuries, pain and suffering, aggravation of pre-existing conditions, mental anguish, inconvenience, the loss of capacity for enjoyment of life, loss of earnings/benefits, and has incurred medical expenses in the past and will incur additional medical expenses in the future. All of said damages are permanent and continuing in nature. In addition, Plaintiff lost the benefit of her vacation and cruise

WHEREFORE, Plaintiff demands judgment against Defendant for all damages recoverable under the law, including pre- and post-judgment interest, costs of suit, and such further relief as this Court deems just and proper.

**COUNT III - NEGLIGENCE**
**DIRECT NEGLIGENCE OF DEFENDANT FOR FAILURE TO TRAIN**

90. Plaintiff realleges, adopts, and incorporates by reference, as though fully set forth herein, paragraphs 1-76, and further alleges as follows.

91. It was the duty of Defendant to provide Plaintiff with reasonable care under the circumstances and the duty to warn Plaintiff of all dangers it knew or should have known.

92. Defendant was negligent in the implementation and/or operation of the training program for the crew members responsible for the area of the subject incident.

93. Defendant was negligent as it breached its duties by:

a. Failing to train or sufficiently train ship's crew, in particular the crew member(s) responsible for the subject area of the incident;

b. Failing to train or sufficiently train ship's crew to inspect the equipment in the shower to make sure secure and safe;

c. Failing to train or sufficiently train ship's crew to report unsecure and/or defective equipment in the showers in guest cabins;

d. Failing to train or sufficiently train ship's crew to provide anti-slip mats and/or anti-slip strips on the floor of the shower;

e. Failing to train or sufficiently train ship's crew to inform guests which equipment was appropriate and/or inappropriate to grab/balance/hold onto in guest showers;

94. With regard to the alleged improper training, the Defendant:

a. Knew of the foregoing conditions (dangers of wet and soapy floor as well as need for guests to have something to hold onto/balance on in the shower), policies or procedures in advance of the subject incident, but did not properly train its crew members, or

b. The foregoing conditions, policies or procedure existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have known of such, but did not adequately train its crew to prevent the incident, or

c. Insofar as relates to the foregoing conditions, policies or procedures not created by the Defendant, Defendant's knowledge for adequate training was or should have been

acquired through (i) prior similar incident(s) and/or (ii) through its maintenance, inspection and/or observation(s) of the aforesaid conditions, policy(ies) or procedure(s) through shipboard personnel present at times leading up to and/or at the time of the subject incident or who otherwise were charged with such duties and/or (iii) through implementation of policies and/or procedures intended to prevent creation of such, but did not correct or warn of them and/or (iv) though warnings provided in wet/slippery areas as well as pertaining to equipment and/or (v) blocking passenger access when an area wet/slippery or unsafe, or

95. All or some of the above acts and/omissions by Defendant, its agents, employees and/or crew members, directly caused and/or caused or contributed to Plaintiff being severely injured.

96. As a direct and proximate result of Defendant's negligent training, Plaintiff suffered severe injuries, including but not limited to the fractured right femur that required surgery with rod, screws and nail.

97. As a further direct and proximate result of Defendant's negligent training, Plaintiff sustained serious and permanent injuries, pain and suffering, aggravation of pre-existing conditions, mental anguish, inconvenience, the loss of capacity for enjoyment of life, loss of earnings/benefits, and has incurred medical expenses in the past and will incur additional medical expenses in the future. All of said damages are permanent and continuing in nature. In addition, Plaintiff lost the benefit of her vacation and cruise

WHEREFORE, Plaintiff demands judgment against Defendant for all damages recoverable under the law, including pre- and post-judgment interest, costs of suit, and such

further relief as this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby requests and demands a trial by jury on all claims so triable.

Date: November 3, 2026.

MEISTER LAW, LLC
*Attorney for Plaintiff*
9300 S. Dadeland Blvd. | Suite 101
Miami, Florida 33156
Office: (305) 590-5570
Facsimile: (305) 675-3787
Email: TonyaJMeister@aol.com
maria@meisterlawfirm.com
paula@meisterlawfirm.com

By: __*/s/ Tonya J. Meister*__________
TONYA J. MEISTER
FLORIDA BAR NO.: 0629243